Mr. Georgian was on the threshold of becoming a peace officer himself as a California CDC prison guard. He had graduated the academy and just took a hiatus before his first assignment to care for his sick mother when this incident arose. And what we have here is a very simple question of fact that should have been left to the trier of fact. The dispute is made clear by Defendant Adams' declaration itself. What she says in paragraph 19 of her declaration, which is on page 76 of the excerpt of record, is although I originally believed Mr. Georgian's story about Mr. Churchill stealing the items from doorsteps, meaning when he first disclosed the stolen property to the detective, she had no probable cause at that moment, everyone would recognize it would be an absurd interpretation to say that handing stolen property to the police makes you subject to being arrested for possessing stolen property. So the detective admits that that's an absurd interpretation by simply saying, hey, when I first learned about this case and he showed me the stolen property, I believed him. No problem. No suspicion. Well, let's look, I think we know what the facts are here, but let's look at, I have, my question's a little, I'd like to focus on in terms of giving all inferences to your client. And one of them is the annoying phone calls. I mean that she's annoyed by the phone calls. There's, or there are phone calls and there's some, you know, I could go directly to the record what it is. But okay, so we have, and then we have, we have the chronology that you're talking to and they do the surveillance and, and that he does have some stolen property at some point. They do the search warrant. They do all of those. So when we take the undisputed facts and those giving all inferences in favor of your client, when we look at whether there's probable cause, is that an objective test? Yes, I believe it is. All right. So let's assume that the officer is annoyed with his phone calls, but then we have all of these other facts as well. Why is that not like, say, when an officer pulls someone over for a taillight, but the officer really is pulling that person over for the taillight because the officer thinks that person is a drug dealer or something along those lines. And we know that the case law says in that instance, it's protectural in a sense, but the taillight's really out. So there's still, you know, there's still legal cause to pull the person over. Why is this not like that? I think you're putting your finger right on what the issue they will be raising. And what is clear is that what the, what we have here is that we don't have the taillight until the officer says certain other facts occurred, facts which she herself contradicts. She says, I became suspicious because nothing that Georgian said seemed to be supported by the evidence. That's paragraph 19. However, in paragraph 18, she says, we went to Churchill's house, and, gee, what did we find? We found the box for one of the stolen CD shipments with the UPS label on it. And that flatly contradicts the assertion in paragraph 19 that there's no supporting evidence. It absolutely corroborates Mr. Georgian. Furthermore, the factual question for a jury or a finder of fact would be the further assumption that the factual assertion that there was adequate surveillance or an adequate attempt to corroborate the things that Mr. Georgian told her. If I may cite to paragraph, well, it's page 8 of the excerpt of record, the deposition of the officer doing the surveillance, he says, well, you know, I told the detective that we're not going to get around to this for at least a week. You know, this was a low priority for them. So for her to somehow say, well, we did surveillance, and therefore, we were unable to corroborate, and therefore, there is a suspicion, that's simply a question of fact for the jury as to whether or not that surveillance is factually sufficient to raise a suspicion if you don't see somebody committing a crime. Furthermore, she herself was another detective in paragraph 13 of her declaration, which is on the preceding page. Well, I guess I see it, you know, I guess I see it a little differently from this standpoint. If all of those things are done, what's not disputed is at the end of the day is that probable cause. And then if we say that it is, that's the end of the inquiry. If we say that it isn't, then if you go to the next question on also one of the, I think, undisputed facts is she asked her supervisor, can I arrest this person? And the supervisor says yes, and then she arrests him. Let's assume that we agree with you that there isn't probable cause, but we go to the second inquiry. What would a reasonable officer, you know, I mean, you can still not have probable cause, but you can still on the second prong of soft CA be entitled to qualified immunity. How do we deal with that? Sure. Well, you know, in our society, and I would like to reserve a few minutes for a couple of things here. You know, the excuse of I was just following orders or my supervisor told me it was okay has never been acceptable. And I noted that even in the district court's opinion, there was no ability, there was no citation, there was no authority for that proposition. In the review of looking for any case on that point, the only principle that I discovered is that if a supervisor tells you to do something wrong, that makes the supervisor and the organization liable for the wrongdoing. Furthermore, the record is. Well, it would depend on what the supervisor told you to do. Because if under the case law, it would seem reasonable to. Right. An officer, then I think they would be entitled to protection under the second prong. But on the other hand, if they said, you know, go shoot someone in the holding cell, you know. Well, certainly. That probably people wouldn't think that was reasonable. Absolutely. But, of course, the circumstances here are that Detective Adams relates the, quote, facts on which she is relying, facts which are clearly disputed. She herself admits that, well, I drove by Churchill's house and saw the stolen wreath from Mrs. Zuckerman, the wreath that we knew was stolen from Mrs. Zuckerman, and that is a factual corroboration of Mr. Georgian's story. So the thing that's interesting about the record is that that supervisor didn't provide any statement for the record here. We only have the officer claiming, I related the facts to the supervisor, and based on what I related to him, he said it was okay. Actually, I believe it was his chief. Forgive me, Your Honor. All right. Do you want to reserve the balance of your time for rebuttal? Thank you very much. All right. Thanks. Good morning. David Brody, Deputy City Attorney for the appellees in this case. I think just the fact that we're having this discussion or argument about whether there was probable cause or not goes right to qualified immunity. Qualified immunity says that if any reasonable officer, it would have to be clear to a reasonable officer that this was an illegal arrest for the officer not to be protected here by qualified immunity. And I think Your Honor was right on when you talked about the undisputed facts in this case because obviously the disputed facts have to go to the plaintiff at this point. But the undisputed facts are that Mr. Georgian came to the officer saying, I received some property that I believe was stolen. The officer then had surveillance conducted on that other person, turned up nothing. The officer then did the search warrant of that person's house, turned up almost nothing. That empty box is all that they found. But all of the other things that Mr. Georgian had told her that were there at the house were not there anymore. As this is going on, obviously the suspicion of that officer is starting to shift from Mr. Churchill to Mr. Georgian. And I think that any reasonable officer looking at that evidence would start to feel the same way. I think objectively we can say that a reasonable officer. What's the record, what stolen property does he, that's undisputed that he has in his possession? The first stolen property is the statute. That's that $7,000 statute that he, his testimony is that he called the police to report that he had accepted the statute and believed it was stolen. So later on there's more stolen property that I believe he brings to the police station. If someone has stolen property and calls the police and you're drawing inferences in favor of that person, isn't the inference that, you know, he doesn't have it with criminal intent? Isn't that at least a reasonable inference? If there's a question about his intent, then yes, at this point. Well, don't you have to have an intent to be, you know, guilty of possession of stolen property? You have to have the general intent to know it's stolen. So, I mean, if he reports it to the police, I mean, the fair inference is that, you know, he's not wrongfully in possession of stolen property. Isn't that at least one reasonable inference? I think so. If he's entitled to that, you know, it's tough to say there's probable cause to arrest him for possession of stolen property. At that point. Just a minute. And then at the end, all the detective says is, I came to believe that he might have been involved. You know, it doesn't say, you know, I had, you know, I believe there was probable cause. I believe that he might have been involved. That's not even reasonable suspicion. She does testify in her deposition that she believed she had probable cause. And I believe that then she talks to her supervisor to make sure that everything is okay, and the supervisor says, yes, it is okay to arrest that person. But I agree with you. In her declaration, I think that's the words that she uses, that she might have been – that he might have been involved. Well, and she says because of that and because he admitted he had, you know, was in possession of stolen property, she does say, led me to conclude that it had probable cause. But the probable cause is based only on those two things. Well, I think it's based on – That he might have been involved in the theft and, two, that he had possession. I believe it's based on the other things that she found out along the way. And those are that the surveillance did not corroborate what he had said. And the search warrant did not corroborate what he had said. And all the items that she received were from him. She could never tie any of the items to the Churchills. And I think that the first time that he comes in and says, I have this stolen statue, I don't think that's enough for probable cause at that point. But I think it's these other nondisputed facts that come up later that a reasonable officer, including Officer Adams, leads her to believe that this person is involved in the theft. Now, he was already a correctional officer? No, he was not. He testified in his deposition that he had passed a test. And I believe that they were waiting for him to then say, yes, I'm ready to start the academy. But I think he took some time off from that. His mother was sick. And in the meantime, this arrest happened. Well, is there anything that's in the record that the – I guess it's Officer Adams – that she knew that he had this background in – you know, had gone to the academy or, you know, something? I don't believe so. I don't believe so. The one thing that I remember in her deposition, she talked about seeing a uniform in his garage. I don't know if that was part of the record, though, that this court had in front of it. But I believe that that's all the officer knew at that time. Let me pass on to the second question. Let's assume, just for purpose of your argument, that we conclude there was improbable cause. That doesn't necessarily mean you lose, right? Right. The question is, you know, whether she still reasonably believed that. Why don't you address that question? All right, Your Honor. I think that's where we get into the second part of the qualified immunity analysis. And basically, no reasonable officer would have believed that this was a lawful arrest. That's what the court would have to find in order not to give this officer the protection. And I think that, again, we go back to those items of fact that are not disputed here. And they start adding up. Not just the fact that he has a statute, but the fact that nothing else of what he talks about is corroborated. And I think that... Counsel? Counsel? Yes. I have a question for you. When they did the search, they found this UPS box addressed to somebody else. That's certainly corroboration for what Dorkin said. And they saw the stolen wreath on Churchill's gate. That's certainly corroboration. They did not follow up and go to the swap meet to see what Churchill might have been selling. And their surveillance happened quite a bit later than it was asked to be done. So it's very hard for me to see that Inspector Adams had any basis to arrest this man. Well, I think, Your Honor, that what the officer saw was one day that she came to Churchill's house and saw the wreath there, they then got the search warrant. And in the meantime, Mr. Georgian had told the officer that there are many other items of stolen property in the house. Then when they come to the house, the wreath is gone and all of those other stolen property items are gone. They're not there. There is that box, which tends to suggest that maybe there was something unlawful going on, but all of these other items that Mr. Georgian told the officer were there are gone. So I think, and again, I think we get to the point that the officer does not have to believe beyond a reasonable doubt or be able to prove beyond a reasonable doubt somebody's guilt at this point. It's strictly the probable cause to arrest, where she says, hey, here's a guy who brought in this statute and says his friend is doing all this illegal activity, and yet they do the surveillance and there's nothing there. They go to the house where he says there's all kinds of stolen property and yet there's nothing except an empty box. And then all the items that he's bringing her are from him. She cannot tie those to Mr. Churchill. And I think all of those together start to give this officer reasonable basis to suspect that this person is involved much more so than he was. If not, or I should say, in addition to possibly being the one that tips off Mr. Churchill, that they're about to do the search. And so I think all of those together are what add up to the belief in this officer's mind and a reasonable officer's mind that this person is much more involved in this theft activity than he wants to lead on. Your language, counsel, was that she had a basis to suspect. Now, that's not probable cause. No, I agree, Your Honor. And I think it's just that all of the pieces of fact add up to make that officer believe she has probable cause. And I understand, as the Justice said about the language in her declaration, that she believed that he might be involved in this. But she did testify that she believed that she had probable cause to make the arrest. And she confirmed that with her supervisor. And if there are no other questions? There don't appear to be. Thank you for your argument, counsel. Your Honor, if I may first, I'd like to address Judge Callahan's question about was his law enforcement background in the record. And I want to assure the Court that it is in this excerpt of record, and I've been thumbing through it, and I cannot locate it right now. May I submit that in a supplemental citation? No, you don't need to. I'll look.  The interaction that she had with this officer, with Mr. Georgian, the officer, the detective, did know what his background was. And I want to thank Judge Tashima for putting, I think, the circularity of the argument in stark relief. The detective says, I had probable cause because of these facts, but the facts are disputed. As Judge Fletcher points out, even simply stating, we went to the house and didn't find anything. When they admit that they found a box with a label, it's like finding, you know, the victim's blood in the closet of the defendant or something. I mean, it's ridiculous. And she says she saw the stolen wreath from Ms. Zuckerman, saw it on his house. She doesn't describe it as, I saw a similar wreath. She says in her declaration, I saw the wreath. This was corroborated. And I want to thank Judge Fletcher for pointing out again that they simply didn't go to the swap meet. You know, this gentleman is, he knows he did graduate the academy. He was waiting for an assignment. And he's terrified. He said he had already graduated from the academy? Yes, Your Honor. Now, I don't know if that is in there, but he, you know, the record is clearly it was a CO. And he did talk to her. You know, he is terrified, first of all, that physically he's afraid of being shot. And he mentions that in his declaration because he doesn't want to do this. And the key factual dispute on any of these things is whether or not he was working as her confidential informant, which she writes in her notes in the first conversation with the postal inspector. The excerpt of record on that is oh, forgive me. It's excerpt of record page 6. It's her handwritten note. And the description in the deposition is the preceding page, page 5, where it says CI. And furthermore, in the detective's declaration, she says, I never said he could work as a confidential informant for me. Yeah, I gave him my business card because, of course, that was a material artifact that she couldn't deny. But all I said was if you get arrested, just tell him that I'm a contact. His mother, Joan Georgian, in her declaration says, I was listening to a conversation with the detective where she told him what to do and told him that if arrested, tell the officer, take the officer aside, give him my card and tell him that, you know, you're working as an informant for me. And that is a central factual dispute. If nothing else, it is a factual dispute as to whether or not this officer had any factual basis to assert probable cause. And relaying false information to a supervisor is no different than coming in and putting in false statements in an affidavit in support of a search warrant. All right. Your time has expired. Thank you for your comments. This matter will stand submitted.
judges: B. Fletcher, Tashima, Callahan